The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Albert Lee FETTY, Defendant-Appellant.

No. 81SA565.

Supreme Court of Colorado,
En Banc.

Aug. 23, 1982.

Rehearing Denied Sept. 13, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Shelley Gilman, Deputy State Public Defender, Littleton, for defendant-appellant.

HODGES, Chief Justice.

Defendant-Appellant, Albert Lee Fetty, who was found not guilty by reason of insanity to first-degree murder, challenges as unconstitutional section 16–8–105(4), C.R.S. 1973 (1978 Repl. Vol. 8), which requires the trial court to automatically commit a defendant found not guilty by reason of insanity to the department of institutions until such time as he is found eligible for release. The defendant also asserts that the trial court erred in denying his motion to dismiss the murder charge because he

was not afforded a speedy trial as required by section 18–1–405, C.R.S. 1973 (1978 Repl. Vol. 8). The appellant's contentions are without merit and we, therefore, affirm the judgment of the trial court.

## I.

The appellant was charged with first-degree murder. Section 18–3–102, C.R.S. 1973 (1978 Repl. Vol. 8). The information alleged that on May 12, 1979, "Albert Lee Fetty, unlawfully and feloniously after deliberation . . . did cause the death of Jeanette Marie Wilson," his ex-wife.

The appellant pled not guilty by reason of insanity and the trial court, pursuant to section 16–8–105(1), C.R.S. 1973 (1978 Repl. Vol. 8), ordered a sanity examination for him. As a result, the psychiatrist's report opined that the appellant was legally sane at the time of the alleged offense. The appellant's motion for an additional examination by a second psychiatrist was thereafter granted by the trial court. In that report, the appellant was evaluated as legally insane at the time of the alleged offense.[1]

At the commencement of the August 5, 1980 trial on the insanity plea, the appellant moved to dismiss the first-degree murder charge on the ground that a speedy trial was not provided as required by section 18–1–405, C.R.S. 1973 (1978 Repl. Vol. 8). After a hearing, the trial court denied the motion, ruling that defense counsel waived compliance with the requirements of this section[2] by specifically agreeing to the August 5th trial date rather than accepting earlier dates previously offered by the trial court. At the conclusion of the sanity trial, the jury found the defendant not guilty by reason of insanity.

The appellant thereupon filed in the trial court a "Motion in Opposition to Forthwith Commitment" in which he opposed his automatic commitment to the department of institutions as required by section 16–8–105(4). The defendant challenged his automatic commitment on his assertion that section 16–8–105(4) is invalid because it does not provide for a precommitment hearing to determine whether one adjudged not guilty by reason of insanity is legally insane or a danger to himself or others at the time of commitment. As such, it was argued that the statute is "unconstitutional *per se* and as applied in that it violates the defendant's right to due process and equal protection."[3]

---

[1] Two subsequent psychiatric evaluations obtained independently at the request of defense counsel and the prosecution evaluated the defendant as legally insane at the time of Jeanette Wilson's death.

[2] The pertinent provisions of section 18–1–405, are as follows:
(1) Except as otherwise provided in this section, if a defendant is not brought to trial on the issues raised by the . . . information within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody . . . and, . . . the pending charges shall be dismissed. . . .
(6) In computing the time within which the defendant shall be brought to trial . . . the following periods of time shall be excluded: (a) Any period during which the defendant is incompetent to stand trial, . . ., or is under observation or examination pursuant to a plea of not guilty by reason of insanity.

[3] In his appellate brief submitted to this court, the defendant has further specified his constitutional challenge to the statute now under review. In his "Statement of the Issues Presented," the defendant lists four questions for review by this court:

"I. Whether the automatic commitment statute, section 16–8–105(4), as amended, is unconstitutional in violation of due process of law?
II. Whether the Colorado automatic commitment statute violates the Equal Protection Clause of the United States Constitution since it subjects a defendant acquitted by reason of insanity to more lenient commitment standards and more stringent release standards than persons civilly committed?
III. Whether equal protection demands that defendants who successfully raise the affirmative defense of insanity receive the same treatment as defendants who successfully raise other affirmative defenses?
IV. Whether automatic and indefinite commitment to a mental institution pursuant to section 16–8–105(4), as amended, constitutes cruel and unusual punishment in violation of the United States and Colorado Constitutions?"
We do not address the defendant's final argument. It was neither raised by the defendant during trial or in his subsequent motion in opposition to commitment. Accordingly, it has not been properly preserved for appellate review.

The defendant's motion was denied without hearing and, pursuant to section 16–8–105(4), the trial court ordered him committed "to the custody of the department of institutions until such time as he is found eligible for release."

## II.

■■■ We have previously addressed the due process and equal protection arguments set forth in Issues I and II of the defendant's appellate brief. After a detailed discussion of the legal principles involved, we held in *People v. Chavez,* 629 P.2d 1040 (Colo. 1981), that Colorado's automatic commitment statute does not violate the due process rights of one found not guilty by reason of insanity. Nor is equal protection violated by the fact that a defendant is denied the same precommitment hearing or release standards provided those civilly committed. For the reasons set forth in *Chavez,* we find the defendant's first two arguments to be without merit.

■■■ Similarly, we find without merit the defendant's claim that because those who successfully raise the affirmative defense of insanity are automatically committed while those who successfully raise other affirmative defenses (*e.g.,* self-defense, involuntary intoxication and duress) are unconditionally released, section 16–8–105(4) is constitutionally infirm on equal protection grounds.

■■■ Preliminarily, we emphasize that "equal protection" does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620, 624 (1966). *See also People v. Taggart,*

621 P.2d 1375 (Colo. 1981); *Lee v. People,* 170 Colo. 268, 460 P.2d 796 (1969). The proper standard to be applied here is whether the different treatment afforded those found not guilty by reason of insanity is reasonably related to legitimate state interests.[4] We find that the required relationship exists.

The state's interest at stake in automatically committing one found not guilty by reason of insanity is to insure the public's safety as well as the safety of the accused himself. This interest has been consistently found to be both legitimate and significant. *See People v. Chavez, supra; People v. Logan,* 196 Colo. 573, 588 P.2d 870 (1979); *People v. Howell,* 196 Colo. 408, 586 P.2d 27 (1978). In our view, it is this interest which distinguishes the affirmative defense of insanity from other affirmative defenses and warrants the different treatment now challenged as unconstitutional. Specifically, an acquittal based on an affirmative defense other than insanity does not carry with it the presumption that the accused remains a danger to society. Conversely, an adjudication of the accused as not guilty by reason of insanity does carry such a presumption. *People v. Chavez, supra; People v. Kernanen,* 178 Colo. 234, 497 P.2d 8 (1972); *In re Franklin,* 7 Cal.3d 126, 496 P.2d 465, 101 Cal.Rptr. 553 (1972); *In the Matter of Lewis,* 403 A.2d 1115 (Del. 1979); *State v. Allan,* 166 N.W.2d 752 (Iowa 1969); *State ex rel. Barnes v. Behan,* 80 S.D. 370, 124 N.W.2d 179 (1963). Accordingly, there is a rational basis for singling out for immediate commitment only those who successfully raise the affirmative defense of insanity in order that they be subject to observation and examination, as well as any needed treatment, until such time as they no longer pose

4. The defendant argues that a higher level of scrutiny should be employed in testing the constitutional validity of the challenged statute. We disagree, for as was stated in *People v. Chavez, supra* at 1051:

"In the absence of a suspect classification or an intrusion on a fundamental right, the traditional standard of review requires that the challenged classification 'bear some rational relationship to legitimate state purposes' .... No suspect classification is involved

here. Nor does the automatic commitment requirement implicate a fundamental right. Although a commitment to a mental institution constitutes a significant deprivation of liberty ... a person found not guilty by reason of insanity enjoys no fundamental right to unrestricted liberty upon that adjudication. A standard of scrutiny stricter than that of the rational basis criterion would be inappropriate under the circumstances of this case." (Citations and footnotes omitted).

a threat to society by virtue of their mental condition.

### III.

We need only briefly address the defendant's final argument that the trial court erred in denying his motion to dismiss for lack of a speedy trial. While section 18–1–405, C.R.S. 1973 (1978 Repl. Vol. 8), *supra* ft. nt. 3, requires that an accused be brought to trial within six months of a plea of not guilty, this statutory requirement is subject to either an express waiver or other affirmative conduct evidencing such a waiver. *People v. Gallegos,* 192 Colo. 450, 560 P.2d 93 (1977); *Harrington v. District Court,* 192 Colo. 351, 559 P.2d 225 (1977). The record before us establishes that the attorney for the defendant, along with the district attorney, sought the August 5th trial date "for scheduling purposes." Although defense counsel indicated that he was not thereby waiving the defendant's right to a speedy trial, he made no subsequent effort to seek an earlier trial date.[5] Under these circumstances, where a trial date is set at the request of the defendant's attorney to accommodate his schedule, we conclude that the defendant waived any speedy trial claims as to this trial date.

The judgment of the trial court is affirmed.

LEE, J., does not participate.

---

**5.** In arguing the motion to dismiss on speedy trial grounds, defense counsel stated his recollection of how the setting beyond the speedy trial deadline had occurred. He recalled that the speedy trial issue had been discussed at the time the trial was set, and that he expressed the belief that there was no speedy trial problem "but that, if there was, we could set it at an earlier time, or we could move it up, or we could do anything of that nature."